## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ──────────────────────────── ) | |
| CITIZEN AWARENESS PROJECT, INC.,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | |
| ) | |
| UNITED STATES OF AMERICA,  ) | Civil Action No. 1:14-mc-01177-KBJ |
| ) | |
| Defendant.  ) | |
| ) | |
| ────────────────────────────) | |

### CITIZEN AWARENESS PROJECT'S MEMORANDUM IN OPPOSITION TO HOLLY PAZ'S MOTION TO MODIFY DEPOSITION SUBPOENA AND MOTION FOR PROTECTIVE ORDER

### I.  INTRODUCTION

In November of 2012, the Internal Revenue Service illegally released Citizen Awareness Project's ('CAP') then-pending application for recognition of its 501(c)(4) status to a media entity.  The United States admitted to the illegal release in its answer to the complaint.

At issue in the ongoing litigation in the District of Colorado (the federal jurisdiction over Denver where CAP is based) is whether the United States was grossly negligent and the extent and amount of actual damages.

Ms. Paz was the Washington D.C., based supervisor of the Exempt Organizations office in Cincinnati, Ohio that illegally disclosed CAP's then-pending application.  Records produced by the United States demonstrate that Ms. Paz was actively and personally involved in procedural

1

changes regarding the processing of media requests – including requests for copies of tax exempt applications. Additionally, Ms. Paz was personally involved in IRS' internal investigation of the matter, and IRS employees under her supervision were involved in requesting additional information from CAP after the illegal release of the pending tax application.

Under 26 U.S.C. § 7431, the provision under which this lawsuit is proceeding in the District of Colorado, there is no jury trial. Rather, a bench trial will take place. Given the location of the anticipated trial and Fed. R. Civ. P. 45(c), CAP anticipates that trial will essentially take place with the United States District Judge reviewing documents and videotape of the government witnesses located more than 100 miles from Denver, Colorado as the court assess the evidence. This video deposition of Ms. Paz may be the Court's only opportunity to assess Ms. Paz's testimony other than from reading a deposition transcript.

## II.  CAP'S COMPLAINT ALLEGES THE IRS ACTED WITH GROSS NEGLIGENCE

Filing its Amended Verified Complaint on August 8, 2013, CAP alleged, and the United States of America admitted, that the Internal Revenue Service illegally disclosed CAP's then-pending 1024 application for exemption under 501(c)(4) of the Internal Revenue Code. (Amend. Compl. ¶ 12; Answer ¶¶ 12, 39, 42) (Dkt. Nos. 4 and 8). CAP further alleged, and the United States has further admitted in its Answer, that in late November 2012, the IRS illegally disclosed CAP's pending, and therefore confidential, 1024 application to a media outlet called ProPublica. (Amend. Compl. ¶ 4; Answer ¶ 4; Dkt. No. 21 at 4). In May of 2013, ProPublica then published on its website a story mentioning CAP's pending 1024 application, as well as other conservative groups' 1024 applications. (Amend. Compl. ¶¶ 7, 26; Answer ¶ 7, 26). ProPublica's story and CAP's confidential, pending 1024 application was reposted on the websites of other media

outlets both nationally and in Colorado; another fact that the United States has admitted. (Amend. Compl. ¶¶ 9-10; Answer ¶¶ 9-10).

CAP also alleged that the admitted illegal disclosure was willful or the result of gross negligence which if proved at trial would entitle CAP to obtain punitive damages. (Amend. Compl. ¶¶ 12, 41); 26 U.S.C. § 7431(c)(1)(B)(ii). CAP also alleged, and the United States denies, that the admitted illegal disclosure caused the IRS to subject CAP's 1024 application to additional scrutiny. (Amend. Compl. ¶ 10); (Answer ¶ 10). This additional scrutiny caused damage to CAP in the form of legal fees and additional administrative expense in responding to the added scrutiny. (Amend Compl. ¶ 44); (Ex. E) ((30(b)(6) Deposition Transcript, pp. 74-76).

### III.    PAZ'S CLAIMED EMERGENCY IS ONE OF HER OWN MAKING.

As noted above, the timing of Holly Paz's motion belies any claim to an emergency.  Ms. Paz was served with CAP's deposition notice and notice of intent to videotape the deposition on September 29, 2014.

Then, nothing was communicated concerning the deposition between September 29, 2014 and October 6, 2014. On October 6, counsel for the United States—and not Ms. Paz—broached the subject of entering a protective order. On October 7, after requesting a draft protective order for review and consideration, and not receiving it, CAP declined to agree to the government's proposed idea of entering into a protective order.  Paz's counsel did nothing.

Then, on October 8, 2014, the government filed its Opposition to CAP's Motion to Compel. In a footnote the government suggested that the Court issue a protective order. On October 14, 2014, United States Magistrate Judge Boland, the magistrate judge assigned to this case in the District of Colorado, held a hearing and denied the United States' request for a protective order

in both Ms. Paz's videotaped deposition and Ms. Cindy Thomas's videotaped deposition. Again, Paz's counsel did nothing.

Three days ago, Ms. Paz's counsel personally met with CAP's counsel for nearly seven hours in another deposition in this very same case. This presented a perfect opportunity to discuss Ms. Paz's concerns over having her deposition videotaped. Paz's counsel squandered this opportunity, failing to even mention that perhaps Paz's counsel and CAP's counsel may need to discuss the videotaping of Paz's deposition. Again, Paz's counsel did nothing.

Then, less than twenty-four hours before filing this motion,  Paz's counsel sent an after-hours email to CAP's counsel requesting *only that the deposition not be videotaped* and failing to request that CAP and Paz agree to enter a protective order. Rather than attempt to call any one of the four attorneys representing CAP, Paz's counsel then filed this self-styled "Emergency" motion. The Motion is an "emergency" of Paz's own making.

## IV.   PAZ VIOLATED LOCAL RULE 7(m) BECAUSE HER SOLE EMAIL TO CAP'S COUNSEL NEVER MENTIONED ENTERING A PROTECTIVE ORDER NOR WAS HER CONCERNS EVER RAISED DURING THE PAST 24 DAYS.

Local Rule 7(m) demands that counsel *"[d]iscuss* the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought *and, if there is, to narrow the areas of disagreement.*" D.C. Columbia LCivR 7(m). Rule 7(m) mandates that counsel confer with opposing counsel "[r]egardless of whether or not counsel believes it will be productive." *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 n.19 (D.D.C. 2002). "The purpose of this rule is "for litigants to attempt to resolve, or . . . narrow, the disputed issues to prevent unnecessary waste of time and effort on any given motion," not "to simply determine whether the motion will be opposed." *Id*. (citing *Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999) (Lamberth, J.)).  Therefore, Rule 7(m) does contain a

4

"futility exception" because "consultation might still result in some narrowing of the issues...which might lead to fewer filings...." *United States ex rel. Debra Hockett v. Columbia/HCA Healthcare Corp*., 498 F. Supp. 2d 25, 35 n.4 (D.D.C. 2007). A good-faith effort means that the parties must take "real steps to confer." *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006). This Court has previously found under a prior version of the local rule requiring counsel to meet and confer in person or over the telephone that two unanswered phone calls the day of the filing, plus the exchange of three emails in the days prior to the filing does not satisfy the good faith effort required under Local Rule 7(m). *See Abbott GmbH & Co. KG v. Yeda Research & Dev., Co., Ltd*., 576 F. Supp. 2d 44, 47-48 (D.D.C. 2008) This Court should similarly find that one unanswered email—only describing half of their planned Motion—less than twenty-four hours prior to the filing of this Motion is also insufficient to establish good-faith.

Counsel to Holly Paz received CAP's subpoena and notice of deposition on Monday morning, September 29, 2014. (Ex. A) (email from Brigida Benitez, counsel to Holly Paz, to John Zakhem, counsel to CAP, dated September 29, 2014).  Between September 29, 2014 and October 22, 2014, nothing was ever communicated to CAP's counsel indicating that Ms. Paz did not want her deposition videotaped or had any concerns about the notice.

*First*, counsel for the United States, defendant in this matter, suggested—for the first time—that the parties enter a protective order on October 6, 2014. Ms. Paz did not individually request a protective order. Furthermore, despite CAP's repeated request that the United States submit a draft protective order, the United States only provided very general language asking CAP to agree. (Ex. B) (emails between Shawn Sheehy, counsel to CAP and Mara Strier and Paul Allulis, counsel to the United States between October 6-October 7).  CAP declined on the basis that the

general principle the United States proposed did not satisfy the standards set forth in Fed. R. Civ. P. 26(c) (Ex. B) (email dated October 7, 2014 from Shawn Sheehy to Mara Strier and Paul Allulis).

The United States never filed a Motion for a Protective Order. Instead, in a footnote to their Opposition to CAP's Motion to Compel to be heard on October 14, 2014 before the District of Colorado, filed two days later, the government said "The Court *should* also require that the depositions of these witnesses remain confidential and be used solely for the purposes of this litigation." (Def.'s Oppn. to Mot. to Compel at 24 n.14) (Dkt. No. 36) (*filed* Oct. 8, 2014) (Ex. C) (emphasis added). As will be discussed more fully below, Judge Boland denied this request on October 14, 2014. Between October 8, 2014 and October 22, 2014, Ms. Paz did not attempt to discuss the issue with CAP's counsel nor did Ms. Paz seek a protective order.

*Second*, CAP conducted a videotaped deposition of Ms. Cindy Thomas, a former colleague of Ms. Paz. Ms. Brigida Benitez serves as counsel to both Ms. Thomas and Ms. Paz in this matter and was personally present for Ms. Thomas's deposition in Cincinnati, Ohio. At no time during any one of the breaks, or after the deposition concluded, did Ms. Benitez even request to consult with CAP's counsel concerning the possibility of entering a protective order or not videotaping Ms. Paz's deposition.

*Third*, the sole attempt at a "good-faith" effort to meet and confer on this issue came at 6pm on Wednesday, October 22, 2014. At this time, and surely Ms. Paz's counsel was aware, counsel for CAP were on flights returning home to Washington, D.C. and Denver, Colorado after having deposed another witness in this case in Cincinnati, Ohio that very day. Less than 24 hours later— and without even attempting to contact by telephone any of CAP's attorneys—Ms. Paz filed this Motion. This alone cannot constitute taking "real steps to confer." *Ellipso, Inc*, 460 F. Supp. 2d

at 102. Therefore, this solitary and incomplete email cannot constitute a "good-faith" effort under Local Rule 7(m).

*Fourth*, even the sole email itself neglects to state what Ms. Paz is seeking in her Motion. The email only requests that CAP agree not to videotape the deposition. (Ex. D). There is absolutely no mention of perhaps agreeing to some terms on a protective order or any indication that counsel for Ms. Paz intended to file any court action related to this request. Paz's Motion, however, seeks exactly that. (Paz's Mot. at 1). Therefore, even if this Court found that this sole email constitutes sufficient "good-faith" efforts under Local Rule 7(m), this Court cannot conclude that Ms. Paz made a "good-faith" effort at attempting to come to an agreement with CAP's counsel on an appropriate protective order.

Counsel for Ms. Paz had more than three weeks to consult with CAP's counsel concerning the videotaped deposition of Ms. Paz. During that time, Ms. Paz could have discussed the possibility of a protective order with CAP's counsel, but never did. During that time, Ms. Paz could have filed for a Protective Order, but never did. During those twenty-four days, Counsel for Ms. Paz could have called any one of the four attorneys who serve as CAP's counsel to discuss the deposition; Ms. Paz's counsel could have spoken with any one of the three attorneys who attended the depositions in Cincinnati. Instead, counsel to Ms. Paz never even *mentioned* any concern about the videotaped deposition until less than 24 hours prior to filing this Motion, counsel to Ms. Paz transmitted an after-hours email to CAP's counsel that only requested that the deposition not be videotaped. There was no mention of trying to agree to a protective order. This Court should therefore deny Ms. Paz's Motion for failure to comply with Local Rule 7(m).

## V.     JUDGE BOLAND ALREADY DECLINED TO ISSUE A PROTECTIVE ORDER IN THIS ACTION AFTER THE GOVERNMENT MADE A REQUEST FOR A PROTECTIVE ORDER FOR THE SAME WITNESSES.

As noted above, the United States suggested that the Court should issue a protective order for the depositions in this case. However, in granting CAP's Motion to Compel, Judge Boland also declined to grant the government's suggestion that the Court enter a protective order. In declining to grant a protective order, Judge Boland stated that the actions of the agents of the United States of America are clearly a matter of public concern. Judge Boland's order adopted his reasoning as stated during the hearing. CAP will submit the transcript of this hearing later today.

## VI.    CAP NEEDS THE VIDEOTAPE BECAUSE THE GOVERNMENT IS NOT LIKELY TO PERMIT ITS WITNESSES TO TESTIFY AT TRIAL.

CAP needs the videotape of the deposition because Ms. Paz is not required to attend the anticipated bench trial which would be held in Denver, Colorado. Fed. R. Civ. P. 45(c)(1)(A) permits subpoenas to testify at trial only to those persons who reside within 100 miles of where the person is testify. Ms. Paz is therefore under no obligation to attend trial in this case.

Furthermore, during the deposition of Ms. Thomas, CAP's counsel asked Ms. Thomas if she were subpoenaed to testify at trial would she attend. Prior to Ms. Thomas answering the question, Ms. Benitez interjected and said that Ms. Thomas was under no obligation to answer that question and that Ms. Thomas should discuss that matter first with her attorney. Additionally, when CAP was discussing the potential for a protective order with the government around October 8, 2014, CAP raised this concern to the government that the videotapes were needed to be played at trial because the witnesses were under no obligation to attend the trial.

The government gave no indication that CAP's concern was unfounded. CAP's trial, therefore, will largely consist of deposition testimony.

*First*, the Fed. R. Civ. P. 30(b)(3)(A) specifically permits the taking of depositions by videotape. The Advisory Committee note in 1993 notes that the rule "[c]onfers on the party taking the deposition the choice of the method of recording, without the need to obtain prior court approval for one taken other than stenographically"  Fed. R. Civ. P. 30 adv. comm. n. 1993. "The Rule was amended to permit videotaped depositions *as a matter of routine* "in recognition of the fact that videotapes are a means of presenting deposition testimony to juries that is superior to readings from cold, printed records." *Drake v. Benedek Broad. Corp*., No. 99-2227,  2000 U.S. Dist. LEXIS 1418 at *2 (D. Kan. Feb. 9, 2000) (emphasis added) (quoting *Paisley Park Enters., Inc. v. Uptown Productions*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999)).

*Second*, where a witness may not be available at trial "[t]he video taped deposition should be allowed to give the fact finders greater insight by allowing them to observe the witness' demeanor and manner of testifying." *In re Daniels*, 69 F.R.D. 579, 581 (N.D. Ga. 1975). Furthermore, this Court has the authority to permit videotaped depositions where the witness's testimony is essential to at least one issue in the case and where the witness would be unavailable at trial. *Farahmand v. Local Properties, Inc*., 88 F.R.D. 80, 83-84 (N.D. Ga. 1980).

*Third*, contrary to Ms. Paz's self-serving assertion, (Mot. at 4), the documents demonstrate that Ms. Paz is very central to the issues in this case. Documents demonstrate that Ms. Paz was involved and participated in meetings that discussed changes in procedures for how the IRS respond to requests from media for 1024 applications. *See, e.g.,* (US 3721) (email from Lois Lerner on October 15, 2012 stating that Holly Paz and Cindy Thomas are "working on a new process for dealing with press requests that have to do with status and copies of approved

application files."). These discussions resulted in procedural changes on October 22, 2012, November 5, 2012 and November 20, 2012. (US 2262) (email from Cindy Thomas to Holly Paz, among others, explaining that the process for responding to media requests for 1024 applications changed on October 22, 2012 and another meeting was held on November 20 with the Washington, D.C. office to discuss roles and responsibilities). Ms. Paz even chaired the November 20 meeting to "discuss the process for handling of media requests." (US 3648). CAP's pending 1024 application was illegally disclosed on November 28, 2012. (US 11). Documents further demonstrate that Ms. Paz was aware as early as October 23, 2014 that the change in procedures for responding to media requests would be a "disaster if we don't engineer a process really fast." (US 3703).

Furthermore, the documents demonstrate that on January 2, 2013, Lois Lerner emailed Holly Paz and David Fish, another official within Exempt Organizations, ostensibly in response to a ProPublica article about five of the pending 1024 applications the IRS illegally disclosed on November 28, 2012. (3897). Ms. Lerner also emails another individual who was on the previous email and asks "where do we stand—are we going to pursue them--?" (US 3910). One minute later, Ms. Lerner emails the same group wanting to hold a meeting two days later to discuss "the status of these applications." (US 3897, 3914). '[T]hese applications' may refer to the groups whose applications were related to ProPublica, including those specifically named in ProPublica's article of January 2, 2013. The IRS was aware that CAP's application was included among the illegally disclosed applications. *See, e.g.,* (US 10-11). It is, therefore, not clear whether the word 'these' refers to the ProPublica article discussing five of the entities whose still-pending 1024 applications ProPublica received, discussed in its news article and publicly disseminated, or whether 'these' refers to all 9 organizations, including CAP, whose then

pending 1024 applications were submitted to <u>ProPublica</u>. CAP should be permitted to fully explore the subject matters discussed at this meeting and whether any of the discussions resulted in subjecting CAP's 1024 application to additional scrutiny.

Subsequent events indicate that at this meeting with Lois Lerner and Holly Paz, among others, the IRS decided to "pursue" CAP for particular scrutiny. On January 13, 2013, nine days after Lois Lerner's and Holly Paz's January 4th meeting, Ronald Bell entered CAP's file and—within minutes—made "changes to case data; [and] *a case grade change*." (US 3611) (emphasis added). Mr. Bell also submitted CAP's application "for managerial review". (US 3612). Ronald Bell's title is "BOLO—Be On the Look Out—Coordinator" *See, e.g.,* (US 3574). Mr. Bell is described as the coordinator for the examinations of both Tea Party and advocacy group tax exempt applications. (US 3529, 3570, 3574).   Additionally, the request for additional information CAP received in March was sent by an IRS employee in Cincinnati to and IRS employee in the Washington, DC IRS office directly supervised by Ms. Paz. (US 3851).  CAP is entitled to explore these issues as it seeks to determine the nature and extent of gross negligence involved here and the scope of its damages.

Because of Ms. Paz's involvement in the change in procedures for responding to media requests in the Fall of 2012, as well as her involvement in potentially targeted groups whose 1024 applications were disclosed, Ms. Paz's testimony goes to the heart of damages and CAP allegations of gross negligence. (Compl. ¶ 41). Additionally, the likelihood that Ms. Paz will not respond to a subpoena to testify at trial, CAP must be permitted to videotape the deposition of Ms. Paz.

## VII.    Conclusion

For the foregoing reasons, the Court should deny the Emergency Motion in all respects.

11

Dated: October 24, 2014                    Respectfully Submitted,

                                           /s/ Jason Torchinsky

                                           Jason Torchinsky (D.C. Bar No. 976033)
                                           Michael Bayes (D.C. Bar No. 501845)
                                           HOLTZMAN VOGEL JOSEFIAK PLLC
                                           45 North Hill Drive
                                           Suite 100
                                           Warrenton, VA 20186
                                           Tel: (540) 341-8808
                                           Fax: (540) 341-8809

                                           John S. Zakhem, Esq.
                                           John L. Skari, Jr., Esq.
                                           Jackson Kelly PLLC
                                           1099 18th Street, Suite 2150
                                           Denver, CO 80202
                                           Phone: 303-390-0351
                                           Email: jszakhem@jacksonkelly.com
                                           *Counsel for Citizen Awareness Project*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 24, 2014, I electronically filed Citizen Awareness Project, Inc.'s Memorandum in Opposition To Holly Paz's Motion To Modify Deposition Subpoena And Motion For A Protective Order, and its accompanying exhibits with the Clerk of the District Court using the CM/ECF system which sent notification of such filing to the following:

Brigida Benitez
Erica Gerson
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
bbenitez@steptoe.com
egerson@steptoe.com
*Counsel for Holly Paz.*

To the following, I hereby certify that on October 24, 2014, I sent the above named documents via First Class mail to the following:

Mara A. Strier
Paul A. Allulis
U.S. Department of Justice
Trial Attorneys, Tax Division
P.O. Box 11498
Ben Franklin Station
Washington, D.C. 20044
Phone: 202-514-5886
Fax: 202-514-9868
Email: mara.a.strier@usdoj.gov
Email: paul.a.allulis@usdoj.gov

/s/ Jason Torchinsky
Holtzman Vogel Josefiak, PLLC.